JOYNES, J.
The petition presented by Hiram Hill at the fall term, 1854, is spoken of in the bill in this case, and in the printed arguments, as a bill of review. But it was not a bill of review, either in form or in substance. It did not allege either error of law apparent on the record, or newly discovered evidence, which are alone the proper grounds of a bill of review. It was a petition to open the original decree, which had been rendered without an appearance by the petitioner, and alleged accident and surprise as the grounds of it. Such a proceeding may be either by petition, as in Kemp v. Squire, 1 Ves. Sr. R. 205, and Cunyngham v. Cunyngham, Ambler R. 89; which seems to be the usual and proper practice in England (2 Daniel Ch. Pr. 684-5, and cases cited), or by original bill, as in Erwin v. Vint, 6 Munf. 267, and Callaway *v. Alexander, 8 Leigh 114. In either form it is an original proceeding, and may be commenced without previous leave of the court. It is alleged in the bill that this petition was presented to the court, and that the court overruled the application for leave to file it, though the order of the court is not in the record. The refusal of the court to allow this petition to be filed was not a legal adjudication upon the case presented by it, as in the case of refusal to allow a bill of review to be filed. In the case of a bill of review, the leave of the court is necessary to entitle the plaintiff to file it, so that the refusal to give the leave is an adjudication of a question properly before the court for its decision. But in this case, the court, in refusing the leave, did not decide a question properly before it, and its decision was, therefore, simply nugatory. Hill mig'ht have filed his bill, in the usual way, notwithstanding that refusal. The rejection of that petition, therefore, was no bar to the present bill, which seeks relief, in part, on the same grounds relied on in that petition.
The bill in this case is called on its face an original bill. It alleges, among other tilings, various objections to the decree arising on the face of the proceedings. It has been contended in argument, that it may be treated as a bill of review, for the purpose of enabling the court to pass upon such of its averments as contain proper matter for such a bill. I do not think we can regard it as a bill of review, in the *652 proper sense, because it was filed without the previous leave of the court, which, according' to our practice, is necessary in all cases of bills- of review. 2 Rob. Pr. 418. But this is a matter of no practical importance. The decree complained of was rendered against the appellants upon the bill taken for confessed, and without an3r subsequent appearance by them. And the Code, ch. 181, sect. S, provides that the court in which there is a judgment by default, or a decree on a bill taken for confessed, *or the judge of. such court in vacation, may, 'on motion, reverse such judgment or decree for any error for which an appellate court might reverse it, but for the next following section, and give such judgment or decree as oug'ht to be given. The next section provides that no appeal, writ of error, or supersedeas shall be allowed by an appellate court or judge for any matter for which a judgment or decree may be reversed or amended on motion by the court which rendered it or the judge thereof, until such motion is made and overruled, in whole or in part.
It was competent, therefore, for the appellants to submit a motion to the circuit court for a reversal and correction of the decree complained of upon any ground on which it might have been reversed and corrected by an appellate court, if the statute had allowed an appeal without such previous application to the circuit court. See Davis v. Commonwealth, 16 Graft. 134.
This statute, it will be observed, contemplates a cheap, convenient and expeditious mode of proceeding, by motion and without pleadings. It allows notice of the motion, which is to be only “reasonable notice,” to be given to the opposite party, or to his agent, or attorney, in fact or at law. It does not contemplate the more formal, expensive, and dilatory proceeding, by bill and regular process. And it contemplates, that if the motion is overruled, wholly or in part, the appeal shall after-wards be taken from the original decree, as it stood originally, if the motion is wholly overruled, or as amended and corrected, if the motion is sustained in part.
The proceeding in the present case, therefore, has not been in strict conformitj’- to this statute. The proceeding is by bill and not by motion, and the appeal is from the decree on this bill, and not from the original decree. But as the bill embraced other grounds which gave the court jurisdiction, no inconvenience or additional expense ^resulted from embracing in it likewise such allegations of error as might have been made the ground of a motion under the statute. And as the record in the original case has been made a part of the bill in this case, so that all the facts are fully before the court, I think we may properly review the action of the court upon this appeal in reference to the alleged errors in the original decree, as well as in reference to the other grounds upon which the bill seeks relief. If we find such errors in the original decree, a reversal and correction of the decree now appealed from, in those particulars, will have the same effect' as a reversal and correction of the original decree. I will proceed, therefore, to consider whether there has been shown to be any error in the original decree for which the appellants would have been entitled to have it reversed or corrected by an appellate court, if the statute had allowed an appeal in the first instance, or if it was now before us on a direct appeal from it. The allegations of error are not anywhere precisely collated, but I shall notice such as seem to be mainly relied upon, as I collect them from the bill, the petition of appeal and the arguments of counsel.
1. It is alleged that the original decree is. erroneous in giving interest to Bowyer and wife on $1,257.37 from January 1, 1851, instead of from May 22, 1854, and in giving interest to Hill and wife on $968.67" from January 1, 1851, to May 22, 1854, the commissioner in his report having already allowed interest to the latter date on both these sums.
These are palpable errors. It appears bj a paper which has been annexed to the record by the clerk, and is stated by him to have been so annexed by consent of counsel, that subsequently to the • date of the decree now appealed from, the counsel for Bowyer and wife and the counsel for Hill and wife directed the clerk to correct these errors by endorsement on any executions that might be issued on *the original decree. The petition of appeal admits that these corrections have been thus made by the counsel, but it is suggested that they are not sufficient in law to bar the femes, in case they should survive their husbands and become thereby entitled to demand the money decreed. This objection cannot be sustained. The mistakes were obvious, and their correction was a matter of course. The counsel for the parties in whose favor the decree was made had full authority to bind their clients by making the corrections. The femes are bound by this act of the counsel as well as their husbands. It being thus apparent to us, by the admission of counsel, that these errors have been properly corrected, we would not give costs to the appellants if we were to correct them by an amendment of the decree on the ground that the correction of them by the counsel is not technically before us. This matter may, therefore, be left to stand as it is.
2. It is alleged as error that, while the appellant Hill is charged with the rents for 1846, 1847 and 1848, he is not credited for the money collected by Bowyer and George P. Hill from Watson, who occupied the land during those years under a contract with Tracey, as shown by the record of the case of Watson v. Tracey.
The commissioner in his report, suggested that the case of Watson v. Tracey should be heard along with Bowyer & wife v. Hill & als., and that whatever sum might be realized in Watson v. Tracey for these rents should be a credit to Hill on the *653 balances due by him as guardian. But the -cases were not heard together. The money ■collected from Watson in Watson v. Tracey was not received until after the decree in Bowyer & wife v. Hill & als., and there was nothing in the latter case to show what was likely to be realized in the former. The court was not bound, in consequence of the suggestion of the, commissioner, to postpone the decree in Bowyer & ux. v. Hill als. until this could be ascertained, or to make provision in the decree for a credit that was wholly contingent. The appellants are entitled to a credit on the decree in favor of Bowyer and wife for the sum of $51.96, as of June 3, 1854, and to a credit on the decree in favor of Hill and wife of $68.05, as of the same date. But the Circuit Court can give them the benefit of these credits by directing them to be endorsed on the executions, on a motion for that purpose.
3. It is alleged as error that the case of Bowyer & ux. v> Hill & als. was heard upon depositions, of the taking of which the appellants had no notice. This objection could not be taken, for the first time, in the appellate court. Dickenson v. Davis & al., 2 Heigh 401; Code, ch. 182, sect. 6. In the absence of objection in the court below, an appellate court would presume that notices to take the depositions were duly given, the contrary not appearing. This objection is, therefore, not avoidable on a proceeding under sect. 5, ch. 181.
4. It is alleged as error that the appellants had no notice of the taking of the accounts by the Commissioner, and that the Commissioner did not make regular adjournments of his proceedings, in conformity with sect. 7, ch. 175 of the Code.
The court directed the Commissioner to give notice of the time and place of taking the accounts by publication in a newspaper, as authorized by sect. 5, ch. 175 of the Code. Such publication, the statute declares, “shall be equivalent to personal service of such notice on the parties.” The statute does not limit the class of cases in which the court may direct notice to be given by publication, and we would virtually repeal the statute if we should allow a party to whom notice had been duly given by such publication, to say that he did not see it, or hear of it, and so did not have notice in point of fact. The *party being duly served with process, and thus apprized of the institution of the suit, I apprehend there can be no doubt of the right of the legislature to provide, that notice of subsequent proceedings in it may, if so directed by the court, be given by publication.
As to the adjournments, it does not appear affirmatively that they were not regular. In the absence of objection on that ground in the court below, an appellate court would presume that they were regular. This objection is, therefore, not available in a proceeding under sect. 5, ch. 181.
5. It is alleged as error that Waite, one of Hill’s securities as guardian, was not served with process.
The decree was rendered against Waite, and its validity cannot be questioned in this collateral proceeding by other parties.
6.It is further alleged as error that the bill was multifarious, because it united in one suit parties and subjects which had no necessary or proper connection with each other.
If this objection had been raised in the case while it was in the Circuit Court, it must have been sustained. But not having been raised there, an appellate court would not reverse the decree on that ground alone.
The bill further claims that the decree in the case of Bowyer & wife v. Hill & als. should be opened, and the appellants let in to make their defence, on the ground that they were prevented from doing so by accident and surprise. These grounds, if sustained, are sufficient to entitle the appellants to relief, unless they are precluded by laches, according to the decisions of this court in Erwin v. Vint, and Callaway v. Alexander, before cited. Two facts are alleged to sustain the averment of accident and surprise:
1. The appellant, Hiram Hill, for whom the other appellants are sureties in his bond as guardian, qualified as ^guardian at January term, 1845, of the county court of Fayette, and was removed from the guardianship, on the motion of his sureties, at June term of the same year. In the copy of the order of removal furnished by the clerk of Fayette to the counsel for the plaintiffs in Bowyer & ux. v. Hill & als., and which was filed as an exhibit in that case, a mistake was made in the year, 1850 being put in the place of 1845, so that Hill was thus made to appear to. have been guardian for five years and five months, when, in point of fact, he was guardian for only five months. The Commissioner accordingly made up an account against him for five years after he had ceased to be guardian, charging him with rents and hires which he never received, and with the proceeds of the sale of slaves which he never sold.
2. It is alleged that the appellant, Hill, who, as well as the other appellants, resided in Fayette county, wrote, soon after the institution of the suit, to Mr. Watson (how Judge Watson), of Albemarle county, where the suit was, to engage his services as counsel in the case; that the other appellants relied on Hill to attend to the defence; that Hill supposed that Mr. Watson was giving proper attention to the case in his behalf; and knowing that he had never received anything, and could not justly be made liable for anything, gave himself no uneasiness about the matter. In consequence of a misapprehension, however, Mr. Watson did not attend to the case as counsel for the appellant Hill, while his partner attended to it as counsel for George P. Hill, whose interest was adverse to that of the appellants, and whom Mr. Watson supposed to be the same Hill who had written *654 to him. The consequence was, that- the appellants were wholly undefended by counsel.
There is no proof of these allegations. The letter to Mr. Watson is not produced. His deposition has not been taken. The only thing relied on to prove that such a letter *was written, is a letter from Mr. Watson, written after the decree had been rendered in Bowyer & ux. v. Hill & als. But even if we could accept that as evidence that such a letter was written to Mr. Watson and received, and that he failed to defend the appellants in consequence of the misapprehension alleged in the bill, there is no evidence of any sort that Hill’s letter was replied to, or that he had any sufficient reason to believe that Mr. Watson had received it, and would serve him as counsel.
The whole of the allegations on this head should, therefore, be laid out of the case, as being entirely unsupported by evidence. But if we take them as all true, it would be difficult to imagine a case of grosser laches than this. The appellants were all duly served with process. Hill contented himself with writing a letter to a lawyer to engage his services, while the other appellants did nothing. Hill had no further communication with the lawyer. If he ever heard from him at all, which he does not allege, he gave him no information as to the defence; he paid no fee; made no enquiry as to the progress of the case. How could he suppose that counsel, if willing to work for nothing, could defend him without knowing anything of the facts? When parties are admonished of the institution of a suit, by the service of process, it is their duty to take care of their interests ; if they neglect this duty, it is at their peril. The allegation that Hill gave himself no uneasiness, because he knew that he could not justly be made liable for anything, if proved, would not alter the case. He knew, .by the service of the process upon-himself and his securities, that a claim was made against him; and he must have known that some ground, just or unjust, true or false, would be shown to sustain it. How was counsel or the court to know the facts, so as to protect him against an unjust claim, if he would furnish no evidence • and no information? The truth, is, however, that *he was not justified by the facts in feeling the indifference he professes to have felt. He qualified as guardian at January term, 1845. It does not appear who hired out the slaves and rented out the land for that 'year. If the former guardian, he ought to have turned over the bonds to Hill, and it must be presumed that he did so. What did he do with these bonds, when he ceased to be guardian? What did he do with the slaves? Though they were hired out, they were legally in his charge and possession. What did he do with the property of his wards, of which he returned an inventory to the court at April term? It is a remarkable fact in this case, that Hill, who was clerk of the court, returned an inventory, as required by law, of the property of his wards that had come to his hands, which the court directed to be recorded, but that it cannot be found either on record or among the files of the office.
Hill undoubtedly had a right to suppose that the clerk would make true copies from the records, and that the papers would, therefore, show that he was guardian for only five months. If he had suffered injury from this negligence of the clerk in giving a wrong date to the order of removal, without being guilty of gross negligence himself, he would have had a strong case for relief. But if he had given the least attention to his own interests; if he had obtained a copy of the bill, or if he had furnished counsel with the merest outline of his defence, he would have suffered no injury from this blunder of the clerk.
The cases in which this court has held parties responsible for the consequences of laches in making their defence to legal proceedings against them, are too numerous and familiar to require citation. They are generally cases in which relief ‘has been sought in equity against judgments at law. But in Callaway v. Alexander, already cited, the same principle was held to be applicable to the case of a bill to open a decree by default on the ground of accident "'and surprise. That case bears a strong resemblance to this in the facts, and is a conclusive authority for holding the appellants bound by their laches.
The appellants have certainly been decreed to pay more than they were justly liable for. But we cannot relieve them on this ground from the consequences of their gross and inexcusable laches. To do so, would be to hold out a’ direct encouragement to such conduct. Diligence and vigilance would cease to be the rule, and we should destroy all certainty in the results of judicial proceedings. There have been many cases of great hardship in which this court has refused to give relief on the ground of laches. There was never a harder case, for instance, than Meem v. Rucker, 10 Gratt. 506. But as the court said in that case, “the inevitable answer to the argument [of hardship] is, that the hardship complained of is not to be traced to the administration of justice, but to the party’s own folly and gross laches.”
The bill makes no charge of fraud against Bowyer and wife and Hill and wife, or any of them. It does not allege that they knew that the copy of the order of removal bore a wrong date, or that they knew how long Hill continued to be guardian; and there is no evidence that they did so. Hill and wife, who were non-residents, did not answer the bill, but Bowyer and wife say in their answer, that they did not know that the order had been incorrectly copied, and Mrs. Bowyer, answering in her separate behalf, says she does not know when Hill ceased to be her guardian.
It is contended, however, that if the par *655 ties were not guilty of fraud in obtaining the decree, it w?s a fraud in them to insist upon it after its injustice had been established. I do not think that we can reverse the decree on this ground. No authority has been cited to sustain it. It would have been applicable in Meem v. Rucker, and in *every other case of hardship, in which this court has refused to give relief on the ground of laches.
I am of opinion to affirm the decree.
MONCURE}, P., concurred in the opinion of Joynes, J.
Decree affirmed.