Christian, J.
This is an appeal from a decree of the Circuit court of Albemarle county. The record discloses- • the following facts: James C. Carter was the committee of Elizabeth Davis, a lunatic. In May 1851 he filed his-bill in the Circuit court of Albemarle, in which he set forth that the said lunatic was entitled to certain real estate, the rents and profits of which were inconsiderable ; that the land, if it continued to be rented, would greatly depreciate in value, and that it was manifestly to the interest of the said lunatic, that the land should be sold and the proceeds invested in an interest bearing fund. The heirs of the said lunatic were made defendants to this bill, who answered it; the infants by a guardian ad litem ; and such regular and proper proceedings were had in the cause, that at the October term, 1851, of said court, a decree was entered directing a commissioner to sell the said real estate at public auction upon certain terms therein named. This decree was executed by the commissioner (as to the land now in controversy,), on the 8th day of November 1852, and one James E. Chapman became the purchaser. He paid in cash such sum as was required by the decree of the court, and executed his bonds with James O. Carter, the committee, as security, payable at such times as said decree prescribed. These bonds, as they became due, were collected by the commissioner, and paid over to Carter, the committee, and. the receipts are filed by the commissioner, and signed by Carter, showing upon the face of the receipts, that the bonds of Chapman had been paid in full to the commissioner, and by him paid over to the committee, James C. Carter; and this fact is. reported to the court, in a written report signed by the commissioner, who files said receipts with his report.
To this report there was no exception; and the court,, at its May term, 1858, “ fully approved and ratified” said report, and directed that a commissioner appointed for that purpose, should “convey by deed, with special *243 warranty, to the said James E. Chapman, or "to whom, or in such way as he may direct, at his costs and charges, all the estate, whether in law or in equity, held by the lunatic, Elizabeth Davis, in and to the tract of land in the proceedings herein mentioned, containing 325 acres,” &c.
The record further shows, that the commissioner conveyed this land under the direction of Chapman, the purchaser, to James C. Carter, the committee. On the 14th day of July 1860, Carter conveyed this land, together with other real estate, to a trustee to secure a debt of about |15,000, to Kelson Barksdale; and in that deed the appellant, who was then his wife, united. In Kovember 1866, a bill was filed by Mrs. Carter, after the death of James C. Carter, (the commissioner, Southall, and the purchaser, Chapman, being also dead,) in which she claims that as the heir at law of Elizabeth Davis, the lunatic, she is entitled to the land sold by Commissioner Southall, upon the ground that said sale was null and void, because the said James C. Carter was in fact the purchaser, and not James E. Chapman ; that though the report of the commissioner states, that the purchase money was paid by Chapman to him, and by him to the committee Carter, in point of fact no money was paid, but receipts were simply passed between the commissioner and Carter, to conceal the fact that he was the real purchaser. That being positively prohibited by special provision of the statute law, from becoming the purchaser of the land of his lunatic, either directly or indirectly, the deed made and delivered to Carter under the decree of the Court is null and void, and that the said Carter acquired no title whatever to said laud ; but that the legal and equitable title remained in Elizabeth Davis during her life, and at her death descended to her heirs at law.
After setting forth in detail, the proceedings in the suit referred to above, she prays that these proceedings *244 may be reviewed, and that the decree confirming the pretended sale to Chapman may be set aside, and that the deed to James C. Carter from the commissioner of the court, may be declared null and void. To this bill the administrators of Kelson Barksdale, the administrators of J. C. Carter, the other heirs of Elizabeth Davis, and the trustee in the deed of trust securing the debt due to Kelson Barksdale, are all made parties.
The defendants all answer this bill except the heirs of Elizabeth Davis ; and the administrators of Barksdale both answer and demur to the bill. At the October tei’m, 1867, certain proceedings were had which it is unnecessary to notice here, but which resulted in’a motion to dismiss her bill without prejudice; which .motion was granted by the court.
In February 1868 the same bill in todidem verbis was filed at rules. A demurrer to this bill was also filed at rules by Barksdale’s administrators and Garrett, trustee; and at the May term, 1868, the cause came on to be heard upon the bill taken for confessed as to all the defendants except Barksdale’s administrators, Ira Garrett, trustee, and upon their demurrer to said bill, and the court treating the bill as a bill of review, sustained the demurrer and dismissed the bill, upon the ground that the bill was filed without leave of the court. Thereupon, the plaintiff:' asked leave of the court to file the said bill; which the court refused, and dismissed the bill; the court being of opinion, that the plaintiff was not entitled to the relief sought as against the administrators of Kelson Barks-dale. It is from this decree that an appeal was allowed to this court.
The bills filed by the appellant in this case, (one of which was filed by leave of the court, and after-wards dismissed on her motion without prejudice, and the other filed at rules,) are treated as bills of review, by the court below. But neither was a . bill of review, either in form or substance. Keither alleged error of *245 law apparent on the record, or newly discovered evidence, which are alone proper grounds of a bill of review. Story’s Eq. Pl. § 404; Hill & als. v. Bowyer & als., 18 Gratt. 364.
It is not alleged nor pretended in either bill, that there was any error of law apparent on the face of the proceedings ; but on the contrary, the proceedings are, as stated in the bills, regular and in perfect accordance with the requirements of the law. Eor was there alleged the discovery of new matter such as would give the bill which was dismissed by the court below the necessary characteristics of a hill of review. Such a bill must not only set forth the discovery of new matter which was discovered after the decree, hut it must be ac companied by an affidavit that the new matter could not be produced or used by the party claiming the benefit of it, in the original cause. And the affidavit must also state the nature of the new matter, in order that the court may exercise its judgment upon its relevancy and materiality. Story’s Eq. Pl. § 412; Cooper’s Eq. Pl 91.
In the first place, the new matter must he relevant and material, and such as if known, might probably have produced a different determination. In the next place, the new matter must have first come to the knowledge of the party after the time when it could have been used in the cause at the original hearing. Another qualification of the rule, quite as important and instructive, is, that the matter relied upon must not only he new, but it must be such as the pai'ty by the use of reasonable diligence could not have known. Livingston v. Hubbs, 3 John. Ch. R. 124; Pendleton v. Fay, 3 Paige R. 204.
In the bill under consideration, none of these necessary requisites, which under the rules of equity pleading, always govern bills of review, are to be found. And though the bill was treated and acted upon as a bill of review in the court below, both by the counsel and the court, it was not such a bill either in form or substance. *246 But it must be regarded- as it was treated here, by tbe learned counsel for the appellant, as an original bill impeaching the decree, as one that /was obtained by fraud, that is, fraud in law if not in fact.
If the bill could be treated only as a bill of review, and was filed only as such, it is manifest, from what has already been said as to the nature and requisites of such a bill, that there was no error in the Circuit court refusing the leave to file it. But the bill was filed at rules ; and a demurrer was filed at rules. This demurrer was sustained; and afterwards the same bill was presented, and leave asked to file it as a bill of review; and the leave refused.
Treating it now (as it must be, from its nature,) as an original bill, impeaching the decree sought to be set aside, the question recurs, was there error in the decree of the court sustaining the demurrer? The material allegation in the bill of the appellant, by which she seeks to impeach the decree, is the fact that James C. Carter (her late husband), and the committee of Elizabeth Davis, the lunatic (who was her sister), was in fact the purchaser of the land at the sale made by the commissioner of the court; that the pretended purchase by Chapman was a mere sham; that, in point of fact, no money passed, and that Commissioner Southall simply passed receipts with Carter, and that he (Carter) was in fact the purchaser; and that, inasmuch as he was positively prohibited by special provision of the statute law from becoming the purchaser of the land of his lunatic, either directly or indirectly, therefore the conveyance by the commissioner to him was null and void, and no title passed; but that the legal and equitable title to said land remained in El zabeth Davis, and at her death descended to her heirs at law.
She admits that she united in the deed which her husband executed to Garrett, trustee, to secnre the debt to Barksdale. But she does not pretend to allege, in any *247 form, in a bill of unusual length, that either Garrett or Barksdale had any notice of the fact upon which she relies to impeach the decree, to wit: that Carter, and not Chapman, was the real purchaser; and that under the ■statute the sale was therefore void. No notice to them, actual or constructive, is charged in the bill. Nor is there anything in the proceedings or decree which she seeks to impeach, which could possibly bring home to them knowledge of the alleged legal fraud. The decree was based upon regular and proper proceedings. The report of a commissioner (that commissioner being a lawyer of high personal and professional character) informs the court that Chapman had become the purchaser, and he returns Chapman’s bonds for the purchase money. He afterwards collects the bonds, and files with his second report the receipts of Carter, the committee, for the balance in full of the purchase money collected from Chapman. So that there was nothing even to put him on the enquiry as to the title of Carter.
Barksdale, therefore, stood on the high and impregnable position of a purchaser for valuable consideration, without notice, who had paid .the purchase money, and secured the legal title. Admitting, then, all the allegations of the bill to be true, it is necessary to allege and prove notice of the alleged fraud, before the land in the hands of a bona fide purchaser for value can be made liable to the claim of the appellant. In this case the bill fails to allege notice, either actual or constructive, and for that reason, if no other, the demurrer ought to have been sustained, and the bill dismissed. The doctrine that courts of equity will not grant relief against bona fide purchasers, without notice, has always been adhered to as an indispensable muniment of title. It is founded upon a general principle of public policy to protect and quiet lawful possessions, and strengthen such titles. It is wholly immaterial of what nature the equity is, whether it is founded on a lien, or incumbrance, or *248 trust, or a fraud, or any other claim ; for a bona fide purchase of an. estate for a valuable consideration, .without •notice, purges away the equity from the estate, in the hands of all persons who may derive title under it, with the exception of the original party, whose conscience stands bound by the violation of his trust and meditated' fraud. 1 Story’s Eq. Jur. § 410; 9 Vesey R. 24; 1 John. Ch. R. 219. Courts of equity act upon the conscience, and as it is impossible to attach any demand, upon the conscience of a man who has purchased for a valuable consideration, without notice of any claim or demand against the estate, such a purchaser is entitled' to the peculiar favor and protection of a court of equity. 2 Sugden on Yendors, 295. To so great an extent has equity favored purchasers bona fide without notice, that where the equitable title of the purchaser (who had got in the legal estate), depended upon a forged will, he was held entitled to the protection of the court. In Jones v. Powles, 3 Mylne & Keene, 581, 10 Eng. Ch. R. 310, cited in 2 Eq. L. C. 37, Sir John Leach, M. R,, said: “ Upon full consideration of all the authorities, and the principle upon which the rule is grounded, I am of opinion that the protection of the legal estate is to be extended, not merely to cases in which the title of a purchaser for a valuable consideration, without notice, is-impeachable by reason of a secret act done, but also to cases in which it is impeached by reason of the falsehood of a fact of title asserted by the vendor, or those under whom he claims, where such asserted title is clothed with possession, and the falsehood of the fact asserted could not have been detected by reasonable diligence.”
In Boyce's ex'x v. Waller, 2 B. Mun. R. 91, it was-held that a bona fide purchaser under a fraudulent conveyance, without notice of the invalidity of the deed, will he protected against defrauded creditors. See also* Griffith v. Griffith, 7 Paige Ch. R. 315; and Galatian, &c. v. Erwin, Hopk. R. 48. In the last named case, *249 where a guardian had purchased the estate of his ward, under a decree of sale fraudulently obtained (a case exactly in point), a purchase from the guardian, without notice of the defect, was held valid.
Authorities might be multiplied to any extent. It is sufficient to say that it has been the uniform course of decision in this State, as well as in the other States of the Union, to hold that the bona fide purchaser of a legal title is not affected by any latent equity founded on a trust, fraud or incumbrance, or otherwise, of which he had not notice, actual or constructive. Moore v. Hunter, 1 Gilman’s R. 317; Love v. Braxton, 5 Call 537; Basset v. Nosworthy, 2 Eq. Lead. Cas. 1, 22, and note, and cases therein cited. It is equally well settled, that the party seeking the aid of a court of equity for relief against a bona fi.de purchaser, must allege and prove notice. 2 Lead. Cas. in Eq. 55; Carr v. Callagan, 3 Littel R. 365.
Whatever hardships may sometimes result from these well settled doctrines of equity, founded upon a wise public policy to insure the security of titles, the claim of the appellant in this case does not appeal to the favorable consideration of a court of equity. She is seeking to set aside a deed made under a decree which she in effect alleges was fraudulently obtained by her husband; and yet admits that she united in that very deed with her husband, to an innocent purchaser who paid down $15,000. And after the death of her husband, after the . death of Chapman, the purchaser at the judicial sale, after the death of Southall, the commissioner, who sold the land to Chapman, after the death of all these, the only parties to the original transaction, she asserts her claim as heir at law against the land in the hands of a bona fide purchaser to whom she had united in conveying it, without the slightest allegation that he had -ever had any notice of any defect in his title, actual or constructive. Equity will not lend its aid to enforce such a demand, but will *250 always afford its protection to the innocent bona fids purchaser.
I am of opinion that the Circuit court did not err in sustaining the demurrer and dismissing the bill, and that its decree should be affirmed.
The other judges concurred in the opinion of Christian, J.
Decree aeeirmed.