## MARLING *v.* ROBRECHT *et al.*

### Decided July 6, 1878.

1. When there are various liens on lands of a judgment debtor, it is error to decree a sale of the lands without first ascertaining the amount of the liens and their priorities, for the reason that to decree such sale before ascertaining the amount of the several liens, and their respective priorities has a tendency to sacrifice the property, by discouraging the creditors from bidding, as they probably would, if their right to satisfaction of their debts and the order, in which they were to be paid out of the property, had been previously ascertained.

2. When judgment creditors file their petitions in a suit for the sale of their debtor's land, it is generally error to enter a decree for sale in their favor, before referring the cause to a commissioner, so that the judgment debtor may have an opportunity of showing any payments made, or set-offs, to which he may be entitled.

3. Generally a practicing attorney may accept service of a writ, or notice for his client, if it is done in good faith.

4. Such attorney, making an acknowledgment of service on the back of the summons, will be presumed *prima facie* at least to have authority for so doing.

5. The effect of the " acceptance " of the service of process is a waiver of the formal service and return thereof by an authorized officer, and is sufficient ordinarily for the cause to be proceeded with.

6. The 8th section of chapter 139 of the Code of 1868 of West Virginia confers upon courts of equity jurisdiction and authority, to enforce judgment liens against the lands of the judgment

debtor, whether he has personal property or estate, out of which the judgment might be made by process of execution, or not. *Peck* v. *Chambers*, 8 W. Va. 210.

7. Where a suit in equity is pending to enforce judgment liens against a debtor's land, the fact, that persons after the commencement of the suit have acquired judgments against the debtor, generally does not make it necessary for the plaintiff to file an amended bill, making the answer of such subsequent or *pendente lite* judgment creditors parties to the suit; nor is it necessary for them generally to file their petitions asking to be made parties, if their judgments are obtained before the order of reference made in the cause, or in time after the order of reference for them to prove their judgments before the commissioner. For such subsequent judgment creditor may be allowed to prove his judgment before the commissioner under the general order of reference, and thus make himself at least a *quasi* party to the cause, and be bound thereby as to his debt.

8. While with the view of saving a multitude of suits and of costs, *pendente lite* judgment creditors may be permitted to prove their judgments before the commissioner under the general order of reference, and file petitions in the cause asking to be made parties defendant thereto, still the filing of such petitions by such *pendente lite* judgment creditors should not be allowed from time to time without limit, so as to unnecessarily delay the plaintiff's cause.

9. When a court, ordering an account to be taken, under the 4th section of chapter 129 of the Code of 1868 of West Virginia, directs, that notice of the time and place of taking it be published for four successive weeks in a newspaper, the service is complete on the fourth issue of the paper containing it, if it be published in the paper once in each successive week, though the four weeks have not actually elapsed between the dates of the first and last publication.

10. When the court orders such account, and that notice of the time and place of taking it be published, as prescribed in said fourth section, it is not necessary to give the effect to such publication contemplated by said 4th section of said chapter, that the court should expressly direct in the decree or order, "that such publication shall be equivalent to personal service of such notice on the parties, or any of them."

11. Whether the court should confirm a sale, made by commissioners under its decree, must in a great measure depend upon the circumstances of each case. It is difficult to lay down any rule applicable to all cases; nor is it possible to

. 56

1878
June Term.

Marling
v.
Robrecht *et al.*

specify all the grounds, which will justify the court in with-holding its approval.

12. The bid made by the purchaser at the sale must be considered as his offer to the court through its commissioners; and in making it he agrees to be bound thereby, if it is accepted and approved by the court; and it is discretionary with the court, whether it will accept the bid and confirm the sale, or set it aside. But this discretion is not an arbitrary one—it should be correctly exercised and is liable to review by an appellate court in a proper case.

Appeal from and *supersedeas* to a decree of the municipal court of Wheeling, rendered on the 6th day of July, 1877, in a cause in said court then pending, wherein Elijah Marling, Sr., was plaintiff, and John Robrecht and others were defendants, allowed on the petition of said Robrecht.

Hon. G. L. Cranmer, judge of the municipal court of Wheeling, rendered the decree complained of.

The facts of the case are fully stated in the opinion of the court.

*Robert White*, for appellant, cited the following authorities:

Code W. Va. ch. 129, §4; *Id.* p. 622, §32; 3 W. Va. 143; 4 W. Va., 490; 7 W. Va., 678; 10 W. Va., 59; 3 Gratt. 318; 21 Gratt. 906; 8 W. Va. 249; Code W. Va. p. 592, §1; *Id.* p. 666, §§5, 7; *Id.* p. 613, §4; 1 Wash. 150; 4 Munf. 366; 10 W. Va. 206; *Id.* 142-3; 4 W. Va. 600; Code W. Va. ch. 132, §8; 9 W. Va. 492; 11 W. Va. 113; Code W. Va. ch. 134, §6; 13 Gratt. 235; 4 Gratt. 87; 16 Gratt. 134; 21 Gratt. 263; Barton's Prac. 172; 9 W. Va. 13; 3 Munf. 29; 4 Rand. 451; 10 W. Va. 78; Story's Eq. Pl., §156; 11 W. Va. 514; 10 W. Va. 203; 7 W. Va. 678; 21 Gratt. 706; Code W. Va. p. 592, §1; 1 Greenl. Ev. §186; 4 Gratt. 87; 10 Gratt. 513; Code p. 613, §4; *Id.* p. 622, §22; 9 W. Va. 443; 3 Gratt., 330; Acts 1872-3, ch.

153; Code ch. 125, §30; *Id.* p. 600, §5; 8 Gratt. 496; 20 Gratt. 658; 8 W. Va. 249; 9 W. Va. 13; 8 W. Va. 210; 12 W. Va. 401; Code p. 630, §8; 35 N. Y. 680; 2 Paige 339; 9 Humph. 520; 6 Humph. 146; 2 Patt. & H. 483; 1 Wall. 655; Code Va. (1849) p. 735, §8; 15 Gratt. 569; 23 Gratt. 409.

*W. P. Hubbard* and *John E. McKennan,* for appellee, cited the following authorities: 5 W. Va. 293; 21 Gratt. 430; 9 W. Va. 492.

*Caldwell & Caldwell,* for appellee, cited the following authorities:

10 W. Va. 203; *Id.* 718; Code p. 592, §1; 7 Kan. 331; 7 Iowa 320; 6 Johns. 295; 1 Binn. 215; 9 Paige ch. 496; Croke (James I.) 695; 12 W. Va. 98; Code Ch. 129, §§7, 8; 6 Gratt. 119; 2 Gratt. 44; 8 W. Va. 210; 18 Gratt. 364; Code ch. 175, §5; 3 Gratt. 330; 21 N. Y. 150; 32 Iowa 469; 4 Pet. 349; 8 Gratt. 289; 11 W. Va. 94; 9 W. Va. 155; *Id.* 492; Code ch. 132, §8; 4 W. Va. 600; 10 W. Va. 142, 143.

HAYMOND, JUDGE, delivered the opinion of the Court:

On the 28th day of October, 1876, the plaintiff commenced his suit in equity in the municipal court of Wheeling, against several persons, whose names are stated in the bill. At the November rules, 1876, the plaintiff, filed his bill in the cause, which is as follows: "To the Honorable Gibson L. Cranmer, judge of the Municipal Court of Wheeling. Humbly complaining, showeth unto your Honor, your orator, Elijah Marling, Sr., that on the 1st day of September, 1876, on the lawside of your Honor's said court, he obtained judgment against John Robrecht for the sum of $501.75, and caused execution to issue thereon. Copies of said judgment and execution and the return of the officer on said execution are herewith exhibited, marked '1' and '2,' and

are prayed to be taken as a part of the bill. Your orator further showeth unto your Honor, that on the 7th day of June, 1875, George O. Davenport, as special commissioner, conveyed to said John Robrecht the following property, to-wit: the property known as the Keim house, situated at the corner of Water and Fourteenth streets, in the city of Wheeling, and bounded as follows: Beginning at the north-west corner of Water and Fourteenth streets; thence north with Water street one hundred feet; thence east by a line parallel with Fourteenth street eighty feet to an open space; thence with the west line of said open space south twenty-two feet; thence east by a line parallel with Fourteenth street to an alley; thence south with the west line of said alley seventy-eight feet to Fourteenth street; thence west with the north line of said Fourteenth street to the place of beginning, together with the right to use said alley on the east side of said property in common with other assignees of James and James R. Baker. A copy of the deed by which said conveyance was made (which was admitted to record in the office of the clerk of Ohio county, West Virginia, on the 7th day of June, 1876), is herewith exhibited, marked '3,' and prayed to be taken as part of this bill; and that the said John Robrecht was the owner of the said real estate, at the time your orator obtained his said judgment against him; and that your orator's said judgment is a lien upon said real estate.

"Your orator further showeth, that on the 7th day of June, 1875, the said John Robrecht and Catharine, his wife, by deed, which was admitted to record on the 7th day of June, 1875, the day of its date, conveyed the said property to George B. Caldwell, in trust to secure the payment of a certain promissory negotiable note made by said John Robrecht, dated June 3, 1875, by which he promised to pay twelve months after its date to his own order $12,000.00, and which note was endorsed by him, and is now held and owned by the Bank of the Ohio

Valley. A copy of said deed of trust is herewith exhibited marked '4,' and prayed to be taken as a part of this bill.

"Your orator further showeth unto your Honor that on the 14th day of August, 1876, Frederick Schenck recovered judgment against said John Robrecht in this court for $30.60, with interest thereon from date of judgment, until paid, and $11.70 costs; that on the same day Otto Hess recovered judgment in this court against said John Robrecht for $301.60, with interest thereon till payment and $11.70 costs; that on the same day Frederick Schenck, and Benjamin Zœckler, partners doing business as Schenck & Zœckler, recovered judgment in this court against said John Robrecht for $50.25, with interest from that date until payment, and $11.70 costs; and that on the 18th day of September, 1876, Henry Schmulbach, Henry Hanke and Solomon Kraus, partners as Henry Schmulbach & Co., recovered judgment in the county court of Ohio county, W. Va., against the said John Robrecht, for $1,503.76, and interest from that date till payment, and $31.50 costs. Said judgments were recorded in the judgment lien docket in the clerk's office of the county court of Ohio county, W. Va., copies of which recorded judgments are here exhibited marked " 5," " 6," " 7," and " 8," and prayed to be taken as part hereof.

"By reference to exhibit " 2," your Honor will see, that the sergeant of the city of Wheeling levied on certain personal property of John Robrecht, by virtue of the execution issued by your orator upon his said judgment, from the sale of which sufficient money was realized to pay the costs of suit in obtaining said judgment and $64.36 on the judgment; and that the sergeant returned on said execution, "No property found whereon to levy for balance."

"Your orator further showeth, that the balance of his said judgment, after crediting said amount of $64.36, made on execution, is wholly unpaid, and is a lien on

the real estate described in exhibit " 3," dating from the first day of the term of court, at which said judgment was obtained. Your orator is informed, that no part of the note, the payment of which is secured by deed of trust to George B. Caldwell (a copy of which is filed as exhibit " 4," of this bill) has been paid.

" Your orator further showeth, that Otto Hess, Frederick Schenck and Schenck & Zœckler caused executions to issue on their said judgments against the said John Robrecht, and that they shared ratably with your orator in the proceeds of sale of the personal property of John Robrecht, made by the sergeant as aforesaid; and that the balance of their respective judgments is wholly unpaid. Your orator is informed, that the judgment of Henry Schmulbach & Co., has not been paid either in whole or in part.

" Your orator further showeth unto your Honor, that the deed of trust and judgments hereinbefore enumerated are the only liens upon the said real estate except the taxes due thereon for the years 1875 and 1876, which amount to ——. Inasmuch as your orator is remediless by the strict rules of the common law and is only relievable in a court of equity, your orator prays that proper process may issue against the said John Robrecht and Catharine, his wife, Bank of the Ohio Valley and George B. Caldwell, trustee, Frederick Schenck, Otto Hess, Frederick Schenck and Benjamin Zœckler, partners as Schenck & Zœckler, and Henry Schmulbach, Henry Hanke and Solomon Kraus, partners as Henry Schmulbach & Co., that they may be made defendants hereto and may answer according to law and the practice of this court.

" And your orator further prays, that on the hearing of this cause the court will ascertain the liens on said real estate mentioned and described in exhibit " 3" and the priorities thereof, and will order a sale of said real estate and the application of the proceeds of such sale to the satisfaction of your orator's said judgment, and that

your orator may receive such other and further relief as his case may require or as to the court may seem just and proper. And your orator will ever pray, &c."

The writ issued in the cause appears to have been duly executed on defendants, John Robrect, Henry Schmulbach, Henry Hanke, Solomon Kraus, George B. Caldwell, trustee, the Bank of the Ohio Valley and John K. Botsford. On the said writ is endorsed "Service of the within writ is accepted this 30th day of October, 1876.

" FREDERICK SCHENCH,

" OTTO HESS,

" SCHENCK & ZŒCKLER,

" By R. G. BARR, *their Attorney.*"

The writ does not appear to have been served on Catharine Robrecht the wife of John Robrecht.

With the bill plaintiff filed, as appears by the record, Exhibits Nos. 1, 2, 3 and 4 respectively. The return of the proper officer upon the execution exhibit 2 shows, that $64.36 was realized subject to the execution out of property of defendant, Robrecht, as in the bill alleged and "no property found whatever to levy the balance." It also appears that plaintiff filed with bill exhibits 5, 6, 7, and 8 therein mentioned.

On the 26th day of December, 1876, this decree was entered in the cause by the court, viz:

"This cause came on this 26th day of December, 1876, to be heard on the summons and return, and endorsements thereon, the bill taken for confessed as to all the defendants, except Catharine Robrecht, who was not served with a copy of the summons, and the exhibit filed with the bill, and was argued by counsel. Upon consideration whereof, it is adjudged, ordered and decreed, that the cause be referred to one of the commissioners of this court to ascertain and report:

"*First.* What real estate the defendant, John Robrecht, owns, and what real estate he owned at the date of complainant's judgment.

"*Second.* The liens upon the real estate, if any, so owned

by the defendant, John Robrecht, and the amounts and priorities thereof.

"*Third.* Any matter deemed pertinent by the commissioner, or that he may be requested by any of the parties to this cause to report.

"The commissioner shall give notice by publication in some newspaper published in the city of Wheeling, once a week for four successive weeks, of the time and place at which he will make up the account of the matters he is herein requested to report."

It appears, that on the 23d day of February, 1877, L. S. Jordan, one of the commissioners of said court, made and filed his report of the matters directed by the last named decree. The commissioner in his report, after stating the substance of the decree of reference, says: "Your commissioner pursuant to the requirements of said decree gave notice by publication once per week, commencing on the 17th day January, 1877, for four successive weeks in the Wheeling Daily *Register*, a newspaper published in the city of Wheeling, that I would, on the 8th day of February, 1877, proceed to ascertain and report as required by said decree, setting forth fully the same. A copy of said notice is herewith filed and made a part of this report."

The commissioner then proceeds with his report; and he reports:

"*First.* The real estate, owned by the defendant, John Robrecht, to be the property known as the 'Keim house' describing its boundaries, &c., together with the right to use said alley on the east side of said property in common with other assignees of James and James R. Baker; and that the said property was conveyed to John Robrecht by George O. Davenport, commissioner, on the 7th day of June, 1875, and the deed therefor was admitted to record in the office of the clerk of the county court of Ohio county, West Virginia on the 7th of June, 1875.

"*Second,* The commissioner reports, the following

are the liens on the said real estate, and in the order of their priorities.

"1st. A deed of trust made by the said John Robrecht and Catharine his wife, to George B. Caldwell, trustee, in trust to secure the Bank of the Ohio Valley the payment of a note for $12,000.00, made by the said John Robrecht, dated June the 3d, 1875, and payable twelve months after date. A copy of said deed of trust is filed with complainant's bill, and marked exhibit "4." Your commissioner reports, that there is due upon the note secured by the said deed of trust the principal amount of $12,000.00, with interest from February 6, 1877.

"2d. Three judgments recovered on the 14th day of August, 1876, in the municipal court of Wheeling against the said John Robrecht.

"The first in favor of Frederick Schenck, for the sum of $303.60, with interest from August 14, 1876, to ———; costs, $11.70; subject to credit, October 18, 1876, of $38.29, and the costs.

"The second in favor of Otto Hess, for the sum of $301.60, with interest from August 14, 1876, to ———; costs, $11.70; subject to a credit, October 18, 1876, of $38.29, and costs.

"The third in favor of Schenck & Zoeckler, for the sum of $501.25, with interest from August 14, 1876, to ———; costs, 11.70; subject to a credit, October 18, 1876, of $64.68 and costs.

"3d. A judgment recovered against the said John Robrecht by Elijah Marling, Sr., on the 1st day September, 1876, in the municipal court of Wheeling, for the sum of $501.75, with interest from September 1, 1876, to ———; costs, —; upon said judgment, the following payments have been made: October 18, 1876, $64.36; (and costs) January 6, 1877, $115.95—$180.31.

4th. A judgment recovered against the said John Robrecht by Henry Schmulbach & Co., in the county court of Ohio county, on the 18th day of September,

1876, for the sum of $1,503.76, with interest from September 18, 1876, to ——; costs, $32.00.

"5th. A judgment recovered against the said· John Robrecht by Henry Schmulbach on the 18th day of December, 1876, in municipal court of Wheeling, for the sum of $416.75, with interest from December 18, 1876, to ——; costs, $17.05.

"6th. A judgment recovered against the said John Robrecht by C. E. Irwin before Justice William H. Caldwell, of Ohio county, on the 6th day of February, 1877, for the sum of $21.71, with interest from February 6, 1876, to ——; costs, $3.30.

"This report was completed on the 8th day of February, 1877, and remained in my office for inspection for more than ten days, or up to the time of filing."

It does not appear, that this report was ever excepted to, or objected to, in any way before the decree of sale hereinafter mentioned. It appears, that on the 27th day of February, 1877, Anton Reyman, by his counsel, appeared in court and tendered his petition, praying to be made a party defendant in the cause; and by permission of the court his petition was filed, and said Reyman made a party defendant. This petition of Reyman states and alleges, that he obtained a judgment for $232.01 with interest from the 21st day of February, 1877, against said John Robrecht, and that he obtained said judgment during the term of said court then being held, and that the same is a lien on the real estate of said John Robrecht from the date of the judgment. He then refers to the plaintiff's suit and its objects, and states, that this cause had been referred to a commissioner, and a report of liabilities and priorities had been made, but no decree of sale has yet been entered, and that his judgment is not reported therein, because obtained since the day the commissioner set to hear proof of claim, &c. He avers, that no part of his judgment has been paid; and he prays in substance to be made a defendant in this cause, and that when any

decree of sale is made of the real estate in the bill in the cause mentioned, his judgment be decreed to be paid out of the proceeds of the sale thereof according to its legal priority, &c.

Immediately following this petition in the record appears an abstract of the judgment in the petition mentioned, which is certified as "an abstract" by the clerk of the court. On the 28th day of March, 1877, the said municipal court made and entered a decree in the cause as follows:

"This day came Robert Simpson and Edward Reid partners doing business under the firm name and style of Simpson & Reid, and tendered their petition, praying, amongst other things, to be made parties defendant in this cause; and with leave of court their said petition is filed, and they are admitted as defendants herein; this cause came on again to be heard on the papers formerly read, and the former orders and decrees, on the duly certified copy now filed of the order of divorce of the defendant, Catharine Robrecht, from the said John Robrecht, entered by the circuit court of Ohio county, West Virginia, June 26th, 1876, on the petitions of Anton Reyman, William Hare, of Simpson & Reid, and of Schenck & Zœckler, filed herein, and upon the report of L. S. Jordan, Esq., a commissioner of this court, pursuant to the decree made and entered in this cause on the 26th day of December, 1876, to which report there is no exception, and the same is approved and confirmed, and the cause was argued by counsel. On consideration whereof, it is by the court adjudged, ordered and decreed that William P. Hubbard and Alfred Caldwell, who are hereby appointed special commissioners for the purpose, do, unless the said John Robrecht do within thirty days from the end of the present term of this court pay off the liens, including interest till payment, and costs in full, mentioned in the said commissioner's report, and unless he also pay before the end of said thirty days the judgments, with in-

terest and costs, mentioned in said petitions, proceed to sell at public auction to the highest bidder, at the front door of the court house in the city of Wheeling, West Virginia; after giving notice for thirty days daily, Sundays excepted, of the times and place and terms of said sale, in the *Intelligencer,* a newspaper published and printed in the city aforesaid, the real estate of John Robrecht mentioned in the bill in this case—that is to say, the property known as the Keim House, situated at the corner of Water and Fourteenth streets, in the city of Wheeling, Ohio county, West Virginia, and bounded as follows: Beginning at the northwest corner of Water and Fourteenth streets, thence north with Water street one hundred feet; thence east by a line parallel with Fourteenth street eighty feet to an open space; thence with the west line of said open space south twenty-two feet; thence east by a line parallel with Fourteenth street to an alley; thence south with the west line of said alley seventy-eight feet to Fourteenth street; thence west with the north line of said Fourteenth street to the place of beginning, together with the right to use said alley on the east side of said property in common with other assignees of James and James R. Baker; but before proceeding under this decree said William P. Hubbard and Alfred Caldwell shall give bond as such special commissioners, with one or more sufficient secureties to be approved by and acknowledged before the clerk of this court, in the penal sum of $20,000.00, conditioned according to law. The terms of said sale shall be, one-third, and so much more as the purchaser may elect to pay, in cash on the day of sale, and for the residue of the purchase money bonds shall be given by the purchaser, dated on the day of sale, and bearing interest from said day, each for one-third of the said residue and payable twelve, eighteen and twenty-four months after the date thereof, with approved personal security, and the title to be retained until the whole of the purchase money is paid.

The petition of Simpson & Reid, mentioned in the above decree, sets up and alleges, that on the 21st day of February, 1877, they recovered judgment, on the law side of said court, against said John Robrecht for $208.34, with interest from 21st February, 1877, and $10.35 costs. The petition alleges, that said judgment is still wholly unpaid and unsatisfied. Petitioners pray, that they be admitted as parties defendant in the cause, and that their judgment may be satisfied out of the proceeds of the sale of the real estate of said Robrecht under decree of the court, &c.

With the last named petition appears an abstract of the judgment, in said petition mentioned, certified as an "abstract" by the clerk of the court. The petition of Schenck & Zœckler, in said decree mentioned, alleges, that they on the 20th day of November, 1876, recovered a judgment on the law side of said municipal court against the said John Robrecht for $114.67, and $16.70 costs of suit, with interest on the debt from the 20th day of November, 1876, until paid; and they file with their petition, as evidence of the judgment, a copy of an abstract of said judgment, which was filed on the judgment lien docket in the clerk's office of the court of the county of Ohio on the — day of November, 1876. The prayer of this petition is, that said judgment be satisfied out of the proceeds of the sale of John Robrecht's realty under decree &c., and that the priority of said judgment may be properly ascertained.

The petition of William Hare alleges, that on the 19th day of February, 1877, he obtained a judgment in said court against Joseph Robrecht and John Robrecht, for $122.10, with interest until paid, and costs of suit; and that his said judgment has been docketed in the clerk's office of the county court of Ohio county; that no part of his judgment has been paid. The petition then refers to the decree of reference theretofore made in the cause; that "petitioner had not on the 8th of February, the time appointed by said commissioner for ascertain-

ing the several matters in said decree mentioned, obtaining his judgment, &c. And the petitioner prays, "that his cause be referred to said commissioner, and that the amount and priority of his lien be ascertained by said commissioner, &c.; and that his judgment be paid out of the proceeds of the sale of the estate of said John Robrecht, when sold in this cause. No copy or abstract of the judgment, alleged in the petition of said Hare, appears in the record.

On the 18th day of June, 1877, special commissioners Hubbard and Caldwell, as appears by the record, filed in court their report of sale of the real property of said John Robrecht, which they were directed to sell in said decree of sale; by which report of sale, among other things, it appears, that said special commissioners sold said property on the 16th day of June, 1877, and at the sale Henry Schmulbach, being the highest bidder, became the purchaser thereof at the price of $16,000.00; and in pursuance of said decree of sale paid down in hand to said commissioner the sum of $5,333.35, being one-third of the purchase money, and made and delivered to the said commissioners his three bonds, with Augustus Pollack as security, each dated June 16, 1877, and each for the sum of $3,555.55, the residue of said purchase money, and payable in twelve, eighteen and twenty-four months, respectively, with interest from date, the said bonds were filed with the report of sale.

It appears by the record, that on the 30th day of June, 1877, the said court made and entered this order:

"This cause came on to be heard upon notice proven and motion of the defendant, John Robrecht, presented before the judge of this court in vacation, on the 16th day of June, 1877, and then argued, the said judge having then taken time to consider thereof, which said motion is in the words and figures following, to-wit:" I omit the notice because it is long, and simply say, that it is a notice by the said John Robrecht to all the other parties to the cause, including the purchaser of said

property, that on the 16th day of June, 1877, at 9 o'clock, at the court-room of the municipal court of Wheeling, in the city building in Wheeling, W. Va., he would move the judge of said municipal court, to reverse and set aside the decree, rendered in this cause on the 23d day of March, 1877. The said notice specified a number of errors in the proceedings, and on the decree itself, for which the decree should be reversed, and relied on all other errors.

The last named decree recites said notice in full, together with the service thereof, and then proceeds: "And the court, now deciding upon said motion and notice, does overrule said motion, and doth refuse to grant the same, or to reverse and set aside the decree of sale, heretofore made in this cause, and doth refuse to sustain any of the objections, made in said notice for causes of error."

It appears, that on the 30th day of June, 1877, the firm of C. Hess & Son, by leave of the court filed their petition setting up a judgment for $96.60, with interest from the 13th day of July, 1876, and costs, alleged to have been recovered by them on the 10th day of November, 1876, before a justice of Ohio county against the said John Robrecht, and praying to be admitted parties defendant in this cause. And the court ordered, that said C. Hess & Son be admitted as parties defendant, in the cause. An official copy of said last named judgment is filed with the petition last named.

It also appears, that on the 30th day of June, 1877, the defendant, John Robrecht, appeared in court and tendered his answer to the plaintiff's bill filed in the cause, and also filed his exceptions to the report of sale and to the sale, made by the special commissioners under the said decree of sale. It seems however, from the endorsement of the clerk upon the exceptions to the sale, that they were filed with the papers of the cause on the 19th day of June, 1877, while the court was sitting. The exceptions to the sale are as follows:

"John Robrecht here comes into court and excepts to the report of sale, as well as to the sale .made of his property known as the 'Central Hotel,' in the city of Wheeling, by commissioners appointed in the above named cause, which sale was made on 16th day of June, 1877, to one Henry Schmulbach at the price of $16,000.00 upon the terms named in the decree of sale rendered in said cause:

"Because the property is worth a large sum of money over and above the said amount of sale, much more than will pay all the debts mentioned in this cause. ·

"Because the said amount of $16,000.00 is an inadequate price and greatly below the amount necessary to pay the amount referred to in said decree of sale; and because if said sale is confirmed, it would be a sacrifice of said property.

"And in support of these exceptions he files herewith the affidavits of various good and substantial citizens taken before John Walton, a notary public in and for the county of Ohio, marked '2' and made hereby part hereof, and also files herewith his own affidavit as part hereof marked 'R.' He further excepts to said sale, and objects to the confirmation thereof, and insists that it should not be confirmed, because of errors appearing in the record and proceedings in the said cause, for which errors he claims, the Court of Appeals might and would reverse the decree of sale rendered in said cause, which errors are more particularlty pointed out in his answer filed in this cause at the present term of the court, as well as in a notice of a motion made before the judge of this court in vacation on the 16th of June, 1877, which answer and notice are here specially referred to as showing said errors, and he asks that so far as necessary they may be considered as here again repeated. He further states that if said sale is confirmed, he will be much prejudiced thereby.

"JOHN ROBRECHT,"
"By Counsel."

"June Term, 1877."

In support of said exceptions the said Robrecht, by his counsel, filed the affidavits of some fourteen persons, who upon their oaths fix the value of said property res- pectively at from $20,000.00 to $30,000.00; and, to average the estimates of these persons, the value of said property, sold as aforesaid, was at the time of sale about $23,000.00. In their affidavits these persons say, that they fix the value of said property with reference to the present condition of the country; and that they believe, when business revives, said property will be largely increased in value. Henry Stamm, one of these affiants, swears, that he believes, that the said property is worth $30,000.00, and that he so informed the auctioneer, when he was crying said property on the day of sale.

In opposition to the exceptions to said sale are the affidavits of some fourteen persons, who state on their oaths as their opinion, that said property brought a *fair price in the present state of the real estate market;* that real estate in said city is considerably depressed, and is not bringing as good prices, as it did some years ago; that there is very little demand for hotel property in said city, such as that above named.

The answer of said Robrecht, among other things, alleges as error the failure of the court to ascertain and fix the priorities of the judgment liens in the decree of sale, or before the sale.

The plaintiff, by his counsel, filed written exceptions to the answer of said John Robrecht, so tendered as aforesaid, and the exceptions are, that the answer is not responsive to the complainant's bill, or any allegations thereof, and because the answer is wholly irrelevant and immaterial.

On the 5th day of July, 1877, the defendant, the Bank of the Ohio Valley, filed its answer to the plaintiff's bill claiming its debt, &c. I deem it unnecessary for the purposes of this cause, as it now stands before this court, to state the contents of this answer.

On the 6th day of July, 1877, the said municipal court made and entered this final decree in the cause:

" This cause came on this 6th day of July, 1877, to be further heard on the papers formerly read; the decree of sale entered herein on the 23d day of March, 1877 ; the report of sale made by Wm. P. Hubbard and Alfred Caldwell, special commissioners under said decree, and the exceptions thereto filed by the defendant, John Robrecht, with the affidavits filed by said defendant, John Robrecht, in support of said exceptions, and the counter affidavits filed by the complainants ; upon the tender made on the 19th day of June, 1877, by the defendant, John Robrecht, to file his answer to the complainant's bill, upon the petition of Christian Hess and John A. Hess, partners as C. Hess & Son, and upon the answer of the Bank of the Ohio Valley, to which there is no replication. Therefore, the defendant, John Robrecht, by his counsel, asked leave of the court to file a general demurrer to the complainant's bill, to the filing of which demurrer the complainant, by his counsel, objected. Upon consideration whereof, the court doth sustain said objection, and doth refuse to allow said demurrer to be filed. Thereupon the said defendant, John Robrecht, by leave of the court, filed his answer heretofore tendered, to which answer the complainant filed exceptions. And this cause came on to be fully heard upon all the papers formerly read and the papers hereinbefore recited, and upon the said exceptions, and was argued by counsel. Upon consideration whereof, the court doth sustain the complainant's exceptions to the answer of the defendant, John Robrecht, and doth overrule the exceptions of said defendant, John Robrecht, to the report of sale of special commissioners Hubbard and Caldwell, and to the sale made by them on the 16th day of June, 1877, under the decree entered herein on the 23d day of March, 1877. Whereupon, it appearing to the court from said special commissioners' report, that at the sale made by said special commissioners, under said decree of March

23, 1877, and pursuant to the terms thereof, on the 16th day of June, 1877, Henry Schmulbach, being the highest and best bidder, became the purchaser of the real estate therein mentioned, at the price of $16,000.00, and in compliance with the terms of sale paid in hand to said commissioners the sum of $5,333.35; one-third of the purchase money, and with Augustus Pollack as his security, sealed and delivered to said commissioners three bonds each for the sum of $3,555.55 for the residue, payable in twelve, eighteen and twenty-four months respectively, the court doth adjudge, order and decree, that the said report of special commissioners Hubbard and Caldwell and the sale therein mentioned and reported be approved and confirmed, and that the said commissioners, upon the payment in full of the purchase money, do convey to said Henry Schmulbach, by a good and sufficient deed with covenant of special warranty, the said real estate in the bill and proceedings mentioned; and that the said Henry Schmulbach be let into possession of the same, and every part thereof, within five days after the end of this term of this court; and that the said defendant, John Robrecht, who it appears is in possession of said real estate, together with any person who may be in possession *pendente lite*, deliver such possession of said real estate to said Henry Schmulbach within five days after the end of this term of this court, this date, and in default of such delivery leave is granted the said Henry Schmulbach to sue out a writ of possession for the said real estate; and the court doth further order, that said special commissioners upon leaving attested copies thereof with the clerk of this court withdraw and collect the said bonds filed with their report.

And the court doth further adjudge, order and decree, that out of the proceeds of the said sale, the said special commissioners do pay:

*First*—the costs of this suit, to be taxed by the clerk of this court, and the expenses of the said sale, including the legal commissions of said special commissioners for

1878
June Term.

Marling
v.
Robrecht *et al.*

their services, as stated in the report of said special commissioners.

*Second*—To the Bank of the Ohio Valley $1,200.00, with interest from February 6, 1877; $20.00, with interest from October 21, 1876, and $70.00, with interest from June 7, 1877.

*Third*—*Pro rata* to Henry Schenck, $303.60, with interest from August 14, 1876, less $38.29, paid October 18th, 1876; to Otto Hess, $301.60, with interest from August 14, 1876, less $38.29, paid October 18, 1876, and to Schenck & Zœckler, $501.25, with interest from August 14, 1876, less $63.68, paid October 18, 1876.

*Fourth*—To Elijah Marling, Sr., $501.75, with interest from September 1, 1876, less $64.36, paid October 18, 1876, and $115.95, paid January 6, 1877.

*Fifth*—To Henry Schmulbach & Co., $1,503.75, with interest from September 18, 1876, and $32.00 costs.

*Sixth*—To C. Hess & Son, $96.60, with interest from July 13, 1876, and $3.65 costs.

*Seventh*—To Schenck & Zoëckler, $114.69, with interest from November 20, 1876, and costs $17.05.

*Eighth*—To Henry Schmulbach, $416.75, with interest from December 18, 1876, and $17.05 costs.

*Ninth*—To C. E. Irwin, $21.71, with interest from February 6, 1877, and $3.30 costs.

*Tenth*—*Pro rata* to William Hare, $122.10, with interest from February 19, 1877; to Anton Reyman, $232.01, with interest from February 21, 1877, and to Simpson & Reid, $208.34, with interest from February 21, 1877, and $16.35 costs.

*Eleventh*—And that they pay the residue, if any, to the defendant, John Robrecht.

The defendant, John Robrecht, heretofore petitioned for, and obtained from one of the judges of this court, an appeal and *supersedeas* from and to the said decree of sale of March 23, 1877, and the order of June 30, 1877 refusing to reverse the last named decree, and also, the said final decree of the 6th of July, 1877; and the

same are thus before this court now, for review and determination.

The decree of sale of March 23, 1877, is irregular and erroneous, for not ascertaining the amount due upon the judgments mentioned in the petitions, in that decree named, and the legal priorities thereof, before ordering the sale thereof, and in directing the sale to be made, unless the judgments, in the petition mentioned therein referred to, were paid within thirty days from the end of that term of the court. In the case of *Coles' adm'r* v *McRae*, 6 Rand. 644, it was held, that if there be several parties, who claim to be paid their debts, and to be indemnified for securityship, out of a debtor's land and chattels conveyed by deeds, and there be an adversary creditor by judgment, who claims to have the deeds set aside for fraud, and the property sold to pay his judg-ment-debt, an interlocutory decree, which, without de-ciding on the validity of the deeds or the extent to which, and in what order, the said several debts are chargeable on the property, yet directs, that the lands conveyed should be sold for cash, and the proceeds to be paid into bank to the credit of the cause, is premature and erroneous, because it has a tendency to sacrifice the property by discouraging the creditors from bidding, as they probably would, if their right to satisfaction of their debts, and the order, in which they were to be paid out of the property, had been previously ascertained.

The principles, determined in that case in reference to the subject under consideration, have been recognized by the courts of Virginia and of this State from the date of that decision to the present. *Kendrick et al.* v. *Whitney et al.*, 28 Gratt. 646, 655; *Moran* v. *Brent*, 25 Gratt. 104; *Simmons* v. *Lyles*, 27 Gratt. 922; *Wiley* v. *Mahood et al.*, 10 W. Va. 206; *Cralle* v. *Meem*, 8 Gratt. 530; *Bu-chanan* v. *Clark et al.*, 10 Gratt. 165; *Livesay's ex'rs* v. *Jarrett*, 3 W. Va. 283; *Murdock's adm'r* v. *Welles*, 9 W. Va. 552.

It is true, that the commissioner ascertained the

1878
June Term.

Marling
v.
Robrecht *et al.*

Syllabus 1.

amounts and legal priorities of the judgments, in his report mentioned, and the court in its said decree of sale confirmed that report, thus perhaps sufficiently declaring the amount of these judgments and their respective priorities, though I think it best and safest to declare on the face of the decree the amounts and respective priorities of the several judgments, or other liens, reported by the commissioner; so that, if the report of the commissioner should become lost or destroyed, the amount of the lien, debts and their respective priorities, as determined by the court, may still be seen and known by the record. But the amount of the judgment debts of the petitioners in the decree of sale mentioned, or their respective priorities, was never ascertained, or declared, by the court.

The firm of Simpson & Reid, it appears on the face of the decree of sale, were permitted to come in by petition and make themselves defendants, and at the same time a decree was entered directing in effect, that unless their debt claimed in their petition was paid, &c., the property should be sold. And the other petitioners, in that decree mentioned, obtained a like decree in effect, as to the debts mentioned in their respective petitions, without an order having been previously made in the cause making them defendants, and with respect to some of their debts, without any evidence of any description to establish them. This may be said especially with respect to the Hare claim.

In the case of *Kendrick et al.* v. *Whitney et al.*, 28 Gratt. 646, 655, it was held, that when judgment Syllabus 2. creditors file their petitions in a suit for the sale of their debtor's land, it is error to enter a decree for sale in their favor, before referring the cause to a commissioner, so that the judgment debtor may have an opportunity of showing any payments made, or sets-off to which he may be entitled. In the case last cited some of the judgment creditors filed their petitions on the same day the decree of sale was entered; and they had a decree in their favor in the cause, as in the case at bar.

1878
June Term.

Marling
v.
Robrecht *et al.*
Syllabus 3.

It seems to me under the authorities, that generally a practicing attorney may accept the service of a writ or notice for his clients if it is done in good faith. *Perry use &c.* v. *McHuffman*, 7 W. Va., 306, 308, 309; *Denter et al.* v. *John Noyes*, 6 Johns., 295, 300, 301, 302; *American Insurance Co.* v. *Oakley et al.*, 9 Paige Ch. 496; *McCullough's* v. *Geutner*, 1 Binn., (Pa.,) 214; *Hefferman* v. *Burt*, 7 Iowa 320. In the case of *Wm. K. Hendrix et al.* v. *Edward Fuller*, 7 Kan. 331, it was held, that " an attorney making an acknowledgment of service, on the back of the summons will, in the absence of proof to the contrary, be presumed to have authority for so doing." The effect of the " acceptance " of the service of process is a waiver of the formal service, and return thereof by an authorized officer, and is sufficient, ordinarily, for the cause to be proceeded with.

Syllabus 4.

Syllabus 5.

The bill in this cause is good and sufficient on its face. The eighth section of chapter 139 of the Code of 1868 of West Virginia confers upon courts of equity jurisdiction and authority, to enforce judgment liens against the lands of the judgment debtor, at any time, without reference to whether the judgment debtor has personal property or estate, out of which the judgment might be made by process of execution, or not. *Peck* v. *Chambers*, 8 W. Va., 210. The plaintiff in his bill sets out all the liens against the realty of the defendant, Robrecht, existing at the commencement of the suit, either by deed of trust, judgment or otherwise, as he in substance avers in the bill; and he makes all the lienors defendants, except himself. It was unnecessary to make the wife of the defendant, Robrecht, a party defendant in the cause, and she not being served with process in the cause is immaterial.

Syllabus. 6.

The lienors reported by the commissioner in his report are the same mentioned in the bill, with perhaps two or three exceptions, and those persons are judgment creditors, who obtained their judgments some time after the commencement of this suit. The judgments of the

1878
June Term.

Marling
v.
Robrecht *et al.*

petitioners in the decree of sale mentioned, according to their petitions were obtained after the commencement of this suit. The judgment creditors of defendant John Robrecht, who obtained their respective judgments after the commencement of this suit, could not properly be made defendants in the cause at the commencement thereof, for then they had acquired no lien upon the realty. It seems to me, that the fact of such after acquired judgments did not make it necessary for the plaintiff to file an amended bill, making the owners of such subsequent, *pendente lite* judgment creditors, parties to the suit; nor was it necessary for them to have filed petitions, asking to be made parties, if their judgments were obtained before the order of reference made in the cause, or in time after the order of reference for them to have proved their judgments before the commissioner. For such subsequent judgment creditors might, by permission, prove their judgments before the commissioner under the general order of reference, and thus make themselves *quasi* parties to the cause, and be bound thereby.

As to judgments received after the commissioners' report is closed, their owners perhaps might file their petitions before a decree of sale, provided the reception of such petitions and the necessary time for the proper adjudication thereof, would not cause unreasonable delay of the suit and a decree therein for the satisfaction of the judgments in existence at the commencement of the suit, and also the application of the proceeds of sale to the liquidation of such prior judgments. While it seems to me, that with the view of saving a multitude of suits and of costs, *pendente lite* judgment creditors may be permitted to prove their judgments before the commissioner under the general order of reference, and to file petitions in the cause, asking to be made parties defendant thereto, still the filing of such petitions by such judgment creditors should not be allowed from time to time without limit, so as to unreasonably delay the plaintiff's cause. If there is no limit to be set, or fixed, to

*Syllabus 7.*

*Syllabus 8.*

the filing of such petitions by such *pendente lite* judgment creditors, then it is easy to see, that an unreasonable and indefinite delay can and may, and doubtless will, be interposed to the enforcement of judgment liens against real property.

Judgment creditors, whose judgments were obtained prior to the commencement of the suit to subject the realty, and who were by accident or otherwise omitted as parties to the suit at its commencement, occupy a different position in some material particulars from *pendente lite* judgment creditors. Such prior judgment creditors may properly be made parties before a decree of sale, on their petition, and their judgments enquired into, and their amounts and priorities ascertained properly and declared by the court. But generally the court ought not to permit *pendente lite* judgment creditors to file their petitions in the cause, after the report of its commissioner is made under a general order of reference, such as was made in this cause, before a decree of sale is rendered, if objected to by the proper parties in interest, and the filing thereof, and further reference to a commissioner to be reported upon, will cause unreasonable delay to the plaintiff in the prosecution of his suit for the enforcement of his lien.

It is proper that a judgment creditor should make all lienors parties to his bill in some judicially recognized form, that is, all persons who have liens at the commencement of the suit; but it cannot be expected, that he shall be indefinitely or unreasonably delayed, in the prosecution of his suit to a realization of his just debt, by *pendente lite* judgment creditors or lienors. But whenever *pendente lite* judgment creditors are allowed, with or without objection, to file their petitions in the cause before decree of sale, asserting their judgments and the liens thereof against the lands of the debtor, an opportunity should be given the debtor, to show the payment of such judgments or prove offsets thereto, if he can, unless he waives the right to do so, and the amount due

upon such judgments, as well as their respective prior-- ities, should be ascertained, before a sale of the realty is decreed; and this should be done generally by a proper order of reference for the purpose.

If such *pendente lite* judgment creditors file their petitions in the cause, after a decree of sale is made in the cause, a like course should be pursued with them; but the filing of the petitions need not ordinarily delay the sale of the realty decreed, nor the confirmation of the sale; and, unless for special reasons appearing, need not generally delay the disposition of the proceeds of sale among the prior lien creditors. In the case at bar, as we have seen, two or three of the *pendente lite* judgment creditors presented their claims to the commissioner, and he reported them with their respective priorities, and a part of them filed their petitions in the cause before the decree of sale, and one firm filed its petition after the decree of sale.

Regularly the creditor should produce, or file, an official copy of his judgments, instead of a certified "abstract," to establish his judgment and the lien thereof, as between creditors, and as to subsequent purchasers, not only an official copy of the judgment, but also an official copy from the judgment lien docket of the docketing thereof in the proper county. *Dickinson* v. *Chesapeake and Ohio Railroad Co. et al.*, 7 W. Va. 390.

Section 4 of chapter 129 of the Code of this State is in these words: "The court ordering an account to be taken may direct, that notice of the time and place of taking it be published, once a week for four successive weeks, in some convenient newspaper, and that such publication shall be equivalent to personal service of such notice on the parties or any of them." The commissioner, to whom the reference was made, reports to the court, that he "gave notice by publication once per week, for four successive weeks in the *Wheeling Daily Register*, a newspaper published in the city of Wheeling, that he would on the 8th day of February, 1877, proceed to as-

ascertain and report, as required by said decree: setting forth fully the same." Thus it appears from the face of the report, that four weeks did not elapse between the first publication and the day fixed for taking the account, and it is argued by the appellant's counsel, that the notice published was insufficient for this cause, under the statute.

In the case of *Banter* v. *Wood et al.* 32 Iowa 469, it was held, that where an order directs the publication of an original notice in a weekly newspaper for four consecutive weeks, in conformity with the statute, the service will be deemed complete on the fourth issue of the paper containing it, though four weeks have not actually elapsed between the dates of the first and last publication." *In Olcott* v. *Robison*, 21 New York 150, it was held that it is sufficient notice of the sale of real estate upon execution, to post a notice, as required by the statute, forty-two days previous to the sale, and publish a copy thereof in six successive numbers of a weekly newspaper, although the first publication may be less than six weeks prior to the sale." *Sheldon* v. *Wright*, 7 Bark. 1 Seld. 497.

In *Bacheler* v. *Bacheler*, 1 Mass. 255, it was held, that "An order to give notice, by publishing in a newspaper for three weeks successively, is complied with, by publishing in such newspaper in three successive weeks, although there be not an interval of weeks between either the first and second, or second and third publication." See also as bearing on the subject *Ronkendorff* v. *Taylor's Lessee*, 4 Peters (U. S.) 349. Our attention has not been called to any Virginia decisions upon this subject; nor has any construction, so far as I am advised, been put upon the said 4th section by this court in any case heretofore.

From the language of the said 4th section of said chapter 129 of the Code and the authorities cited, it seems to me, that when a court ordering an account to be taken directs, that notice of the time and place of

*1878 June Term.*

Marling
v.
Robrecht *et al.*

taking it be published, once a week for four successive weeks in a newspaper, the service is complete on the fourth issue of the paper containing it, if it be published in the paper once in each successive week, though four weeks have not actually elapsed between the dates of the first and last publication.

But it is argued further· by appellant's counsel, that the notice, though published for the period prescribed by the statute, is not sufficient, because the court did not enter of record, in the decree of reference and denoting the publication of the notice once a week for four successive weeks in some newspaper published in the city of Wheeling, "and that such publication shall be equivalent to personal service of such notice on the parties or any of them."

In the case of *Hill et al* v. *Bowyer·'et al,* 18 Gratt. 364, it was held, that "the Statute Code ch. 175 §4, does not limit the class of cases, in which the court may direct, that notice may be given by publication; and it is no solid objection by a party, upon whom process in the suit has been served, that he did not see or hear of the notice by publication of the taking an account by a commissioner under the order of the court." In the report of this case it is stated on page 368 as follows: "and the commissioner was directed, instead of serving personal notice on the parties of the time and place of executing the order, to have such notice published once a week four successive weeks in some newspaper in the town of Charlottsville; and also to serve a notice on the counsel, respectively engaged in the suit, of the time and place of taking said accounts, four weeks previous to the time of commencing the same.

Judge Joynes, at pages 380 and 381 of the report, in delivering the opinion of the court says: "It is alleged as error, that the appellants had no notice of the taking of the accounts by the commissioner, and that the commissioner did not make regular adjournments of his proceedings, in conformity with section 8 ch. 175 of the

Code. The court directed the commissioner to give notice of the time and place of taking the accounts by publication in a newspaper, as authorized by the statute by section 5, ch. 175 of the Code. Such publication, the statute declares shall be equivalent to personal service of such notice on the parties." The statute does not limit the class of cases, in which the court may direct notice to be given by publication ; and we would virtually repeal the statute, if we should allow a party, to whom notice had been duly given by such publication, to say that he did not see it, or hear of it, and so did not have notice in point of fact. The party being duly served with process, and thus apprised of the institution of the suit, I apprehend there can be no doubt of the right of the Legislature to provide, that notice of subsequent proceedings in it may, if so directed by the court, be given by publication."

It is manifest from the opinion of Judge Joynes above quoted, that he considered, and also the court, if he expressed their opinion correctly, which it is presumed he did, that if the court directs the commissioner to give notice of the time and place of taking an account by publication for once a week for four sucessive weeks in some convenient newspaper, that the direction is sufficient, in and of itself, without also directing on the record, "that such publication shall be equivalent to personal service of such notice on the parties." And that the effect, meaning and spirit, of said 5th section is, that when the court directs the publication of the time and place of taking an account to be published once a week for four successive weeks in some convenient newspaper, under said 5th section, which is the 4th in our Code of chapter 129, the latter clause of the section declares that such publication shall be equivalent to personal service of such notice on the parties served with process in the cause at least, whether the court directing the account so expressly direct in its decree or order, or not; that when the court directs the notice to be given by publica-

tion, it thereby directs, so far as necessary, by clear implication, if not expressly, that such publication shall be equivalent to personal service of such notice, &c.

Doubtless the construction of said 5th section of the 175th chapter of the Code of Virginia of . 1860, which 5th section, as before stated, is identical with the 4th section of chapter 129 of the Code of this State of 1868, has been adopted by the inferior courts of this State in practice to a considerable extent; and to depart from it now, without strong and overruling reasons, would not be justifiable. I feel under the circumstances authorized to adopt the views of Judge Joynes, but at the same time think, that it would be as well, and perhaps more satisfactory for our courts, in ordering an account to be taken, and directing notice of the time and place of taking it to be published once a week, &c., in some convenient newspaper, &c., to direct in the decree expressly, that such publication shall be equivalent to personal service, &c.

As we have seen, the appellant was served personally with the original writ in this cause; he was therefore before the court, and no error appearing on the face of the report of the commissioner, if the appellant desired in this case this court to pass upon any matter, upon which the report is based, *aliunde* the report itself, he should have excepted to the report for that cause, before it was confirmed by the court below, and thus had that court to have passed upon the exception. This I understand to be the general rule, to which there are perhaps some exceptions; but this case, as it stands, is not within any exception, as far as I am advised.

For the foregoing reasons it seems to me, that there is error in said decree of March 23, 1877; and that the said municipal court should have reviewed the same, when asked to do so. It appears, that these errors were brought to the attention of the court more than once after the 23d of March, 1877, and were brought directly

to the attention of the court by the exceptions of the appellant, filed to the report of sale.

*As to the final decree confirming the sale of the property,* the 8th section of chapter 178 of the Code of Virginia of 1860 is as follows, viz: "If a sale of property be made under a decree or order of court, after six months from the date thereof, and such sale be confirmed, though such decree or order be afterwards reversed or set aside, the title of the purchaser at such sale shall not be affected thereby; but there may be restitution of the proceeds of sale to those entitled." The 8th section of chapter 132 of the Code of this State, which took effect on the 1st day of April, 1869, is as follows: "If a sale of property be made under a decree or order of a court, and such sale be confirmed, though such decree or order be afterwards reversed or set aside, the title of the purchaser at such sale shall not be affected thereby; but there may be restitution of the proceeds of sale to those entitled."

It will be seen that the words "after six months from the date thereof" are omitted in the 8th section of said chapter 132 of our Code, which, in some respects perhaps, makes a substantial difference in said section 8 as in our Code, and section 8 of chapter 175 of the Code of Virginia of 1860, which last named section was in force in this State, until the said Code of 1868 took effect.

In the case of *Sinnett* v. *Cralle's adm'r et al.*, 4 W. Va. 600, Judge Maxwell at page 603, in speaking of the 8th section of chapter 132 of our Code, says: "This language does not refer to the order made confirming the sale, but to the decree or order, under which the sale was made." In the case of *Capeheart's ex'r* v. *Dowery et al.*, 10 W. Va. 130, it was held by this Court among other things and in connection therewith, as follows: "But, if the report of the sale and order of confirmation is excepted to, and the record discloses, in support of such exceptions, sufficient reasons to show, that the sale itself was improper and ought not to have been made, the

decree or order of confirmation will be reversed and the sale set aside." See also as bearing on this subject the case of *Camden* v. *Haymond,* 9 W. Va. 680.

I deem it unnecessary to stop here, to remark upon the two last named cases, or to give interpretation as to their true meaning, but will proceed with the case at bar. We have seen there is error in the decree of sale that the court, on motion and notice to all the parties to the cause, refused to reverse said decree in whole or part. We have also ascertained, what the errors in said decree were.

It also appears, that on the very day the sale took place, and doubtless while the sale was going on, the court was hearing the motion of the appellant to reverse the decree, and the sale was concluded on the day said motion was made, and the motion was not overruled until the 30th of June thereafter. The purchaser at the sale was a party to the suit; and he was served with the said notice of a motion to reverse the decree of sale. The report of sale was excepted to for inadequacy of price and various other reasons, hereinbefore stated; and the court, on the 6th day after it had overruled the said motion to reverse the decree of sale, to-wit: On the 6th day of July, 1877, made said final decree, among other things therein, overruling the exceptions to the sale and report thereof, and confirming the sale to the purchaser, &c.

The evidence before the court, which was in the shape of affidavits filed in support of the exceptions, as we have seen, tends to show that the property did not sell for its present value, under the present state of financial depression, by about $7,000.00, while on the contrary the affidavits, filed in support of the sale, tend to show, that $16,000.00, the sale price, was a fair price for the property under the existing financial depression in the country. The sale was confirmed at the same term, at which the motion to reverse was overruled, and the time intervening between the time the motion to reverse was

overruled, and the confirmation of the sale, was not reasonably sufficient to enable the appellant to obtain a copy of the record and an appeal and *supersedeas* to the decree of sale.

The appellant resisted said decree of sale for sufficient cause, and, so far as appears, acted in good faith therein, the decree of sale being on bill taken for confessed, he could not obtain an appeal therefrom to this Court, until he had first moved said municipal court, or the Judge thereof, upon notice to the parties, to reverse the same for error.

Without undertaking now to decide, whether the errors in said decree of sale, which I have ascertained, or any part of them, are in and of themselves sufficient to authorize a reversal of said final decree, in so far as it confirmed the sale, it seems to me under the peculiar circumstances of the case, it would be exceedingly harsh, and dangerous in the extreme as a precedent, to allow the decree confirming said sale to stand. Under the circumstances I do not feel authorized to undertake to say, that the well founded motion to reverse said decree of sale, made and heard on the day of sale and evidently near the place of sale, did not affect materially, and injuriously to the appellant, the sale of his property; but I must say, that it is reasonable that it should have done so, and most probable that it did do so.

Under the circumstances it seems to me, that fairness and just action on the part of the creditors toward their oppressed debtor, required, that they should have caused the postponement of the sale, at least until the court disposed of said motion finally, as it did on the 30th day of June, 1877. If the errors in the decree of sale had been frivolous, and based on mere technicalities, and there was good reason to believe, or the court saw that the motion to reverse was made simply for delaying the sale, or manufacturing a pretext for excepting to the sale, then perhaps it should have felt bound in

1878
June Term.

Marling
v.
Robrecht et al.

Syllabus 11.

Syllabus 12.

conscience to take a different view of this case, so far as this point is concerned.

Whether the court should confirm a sale, made by commissioners under its decree, must, in a great measure, depend upon the circumstances of each case. It is difficult to lay down any rule applicable to all cases; nor is it possible to specify all the grounds, which will justify the court in withholding its approval, *Brock* v. *Rice et al.*, 27 Gratt. 812.

The bid, made by the purchaser at the sale, must be considered as his offer to the court through its commissioners, and, in making it, he agrees to be bound thereby, if it is accepted and approved by the court; and it is discretionary with the court, whether it will accept the bid and confirm the sale, or set it aside. But this discretion is not an arbitrary one. It should be correctly exercised, and is liable to review by an Appellate Court in a proper case. *Kable* v. *Mitchell*, 9 W. Va. 492.

If this case stood simply upon the affidavits tending to prove, that the sale was for a greatly inadequate price, and the affidavits, which tend to prove that the sale was for a fair price, I should not from these affidavits alone, taking them altogether, feel authorized, upon the principles adjudicated in the case of *Kable* v. *Mitchel*, above cited, and the case of *Hartly & Co.* v. *Roffe et al.* 12 W. Va. 401, to interfere with said sale.

But considering the whole case and all the circumstances the said municipal court erred in approving and confirming said sale; and the said sale should not be confirmed, but a re-sale of the property should be hereafter decreed, when the cause is properly matured, and it shall appear, that a sale of the property is proper for the payment of liens thereon for debts of said John Robrecht.

Some other questions have been raised and discussed in this cause; but, under the view I have taken, I regard them as being immaterial and unnecessary to be now passed upon.

Fore the foregoing reasons there is error in the decrees and orders of the municipal court of Wheeling, made in this cause on the 6th day of July, 1877, the 30th day of June, 1877, and the 23d day of March 1877, respectively; and the same must be reversed; and the appellant recover against the appellees his costs about the prosecucution of his appeal and *supersedeas* in this cause expended. And the cause must be remanded to the said municipal court of Wheeling, with direction to the same by proper decree to cancel and annul the the obligations given by said Henry Schmulbach with security for the deferred instalments of purchase money, and to cause the purchase money paid by Henry Schmulbach, with its proper interest, upon his purchase of the real property sold by the special commissioner, appointed to make the sale, and which sale was confirmed on the 6th day of July, 1877, by said municipal court, to be refunded and repaid to said Henry Schmulbach, as soon as may be, and to do, and cause to be done, all things necessary and proper in the cause for that end and purpose; and with further direction to said municipal court to cause another account and report to be taken of the real estate of said John Robrecht, the liens against the same, and the amount thereof, and the legal priorities thereof upon said real estate; and further to proceed with the cause according to the principles settled in this opinion, and further according to the principles and rules governing courts of equity.

1878<br>
June Term.<br>
——<br>
Marling<br>
v.<br>
Robrecht <i>et al.</i>

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.    CAUSE REMANDED.